LEVI D. WILSON

v.

C. L. AUGUR, Admr.

176    561
196   ¹197

*Opinion filed December 21, 1898.*

1. PLEADING—*material averment neither admitted nor denied must be proved.* A material averment in a bill which is neither admitted nor denied must be proved, as the failure to answer it is not equivalent to an admission of its truth.

2. FRAUD—*title obtained by fraud and forgery cannot be upheld.* Title to land acquired by one who participated in a transaction whereby an assignment of a bond for deed was forged and a deed thereon fraudulently obtained cannot be upheld as against heirs of owner.

3. LACHES—*when bill for relief against fraud is not barred by laches.* Laches on the part of the complainant in a bill for relief against fraud will not defeat recovery, where it appears the fraud was not discovered by the complainant until shortly before filing the bill.

APPEAL from the Circuit Court of Christian county; the Hon. WILLIAM M. FARMER, Judge, presiding.

This was a bill in equity brought by Levi D. Wilson, son and heir-at-law of Daniel Wilson, against C. L. Augur, administrator with the will annexed of the estate of Ephraim M. Burns, deceased, in which he prayed that upon a final hearing of the cause he might be decreed to be in equity the owner of the east 17½ acres off the south-west quarter of the south-east quarter of section 11, and of the north-west quarter of the south-west quarter of section 12, township 15, north, range 1, west of the third principal meridian, in Christian county; that by virtue of the premises C. L. Augur, as administrator, etc., of the will of Ephraim M. Burns, deceased, holds the title to said lands in trust for complainant; that he be decreed to convey said premises to complainant, or upon his refusal that the master in chancery may be directed to make said conveyance to complainant, and for such other relief as may be required in equity.

176—36

The defendant put in an answer to the bill, in which he denied that the deed executed by Grigg and wife to Washington Wilson was not signed and acknowledged by them; denied that Washington Wilson, the grantor in the deed to these premises to Ephraim M. Burns, ever occupied said land as tenant of his father, Daniel Wilson, but asserted that Washington Wilson was the owner in fee of said lands by virtue of a certain deed of conveyance by John Grigg and wife to Washington Wilson for said premises; denied that Daniel Wilson held either the legal or equitable title to said lands, or any part thereof, at the time of the conveyance of said lands by the said Washington Wilson to defendant; denied that E. M. Burns ever concealed his ownership, or any facts connected therewith, from the complainant or any one else, but that he placed on record in the recorder's office in said county said deeds, and thereupon took full and complete possession and control of said lands, and has ever since that time, continuously, until the date of his death, been in possession of said premises, and that at the time of the death of said E. M. Burns he was the owner, in law and in equity, of said lands; admitted that as administrator with the will annexed of the estate of E. M. Burns he assumed control of said lands, and still continues to discharge his duties in that respect; denied that said deed executed by John W. Grigg and wife to Washington Wilson was executed and recorded in fraud or circumvention of the rights of Daniel Wilson or his representatives, and denied that Ephraim M. Burns ever held said lands, or any part thereof, in trust for the heirs of Daniel Wilson or the complainant, as alleged in complainant's bill, and denied that the complainant is entitled to a conveyance of the said lands or any part thereof; that complainant is not entitled to the relief prayed, for reason of anything alleged in said bill, because of the lapse of time since the said matters and things set forth in complainant's bill are supposed to have occurred. Defendant pleaded the

Statute of Limitations and relied upon the *laches* of the complainant as to matters herein contained, and asked to be dismissed, etc.

After the answer had been put in, the complainant filed an amended bill, in which he, among other things, alleged that Washington Wilson connived and colluded with Ephraim M. Burns to defraud Daniel Wilson, and after his death his heirs-at law of their right, title and interest in said lands, by procuring or attempting to procure a deed from John Grigg and wife conveying said lands to Washington Wilson as assignee of Daniel Wilson, without authority, knowledge or consent of Daniel Wilson, who was the owner in equity of said lands and entitled to a deed therefor from said Grigg and wife; that they secretly procured an assignment of said bond for deed to be falsely made and written thereon to Washington Wilson without the knowledge or consent of Daniel Wilson; that there was no consideration therefor, nor for the deed from Grigg and wife to Washington Wilson, and that the same are void as to complainant. It was also alleged that Ephraim M. Burns in his lifetime took the legal title to said land from Washington Wilson by deed dated September 1, 1863, as an implied or constructive trust, and that complainant is in equity the owner of said lands.

After the amended bill was filed the answer to the original bill was not re-filed, but it was treated as an answer to the amended bill by the parties. The cause proceeded to a hearing on the pleadings and evidence, and upon the close of complainant's evidence the court, on motion of defendant, entered a decree dismissing the bill, to reverse which complainant has brought the case to this court by appeal.

L. G. GRUNDY, for appellant:

Forgery confers no right or authority on any one. A forged deed does not protect even an innocent purchaser thereunder. *Chicago Edison Co.* v. *Fay*, 164 Ill. 323; *Pry* v.

*Pry*, 109 id. 466; *D'Wolf* v. *Haydn*, 24 id. 526; *Chandler* v. *White*, 84 id. 435.

The fact of forgery in a civil case is proved like any other fraud. Less evidence is necessary to prove forgery of an instrument not acknowledged than of one (as a deed) that is acknowledged. A mere preponderance in the former case is sufficient. *Kerr* v. *Russell*, 69 Ill. 666; *Baird* v. *Jackson*, 98 id. 78; *Brown* v. *Holzman*, 157 id. 165.

In equity, where relief is sought on the ground of fraud, the rule is that ignorance of the fraud caused by affirmative acts of the guilty party in concealing the facts from the other will not bar the relief, provided suit is brought within proper time after discovery of the fraud. 13 Am. & Eng. Ency. of Law, 682; 2 Perry on Trusts, 861, 867; 2 Pomeroy's Eq. Jur. 917, 965.

Where a party injured by fraud remains in ignorance of it without any fault on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on part of the party committing the fraud to conceal it from the knowledge of the other party. Hurd's Stat. chap. 83, sec. 22; 13 Am. & Eng. Ency. of Law, 683; *Middaugh* v. *Fox*, 135 Ill. 344; *Roby* v. *Colehour*, id. 300; *Henry County* v. *Drainage Co.* 52 id. 299; *Harenden* v. *Annesley*, 2 Sch. & Lef. 630.

Mere silence may be a concealment, as, if there is a position of trust, or the opposite party is a minor or resides in another State. *Clapp* v. *Peterson*, 104 Ill. 26; *Vigus* v. *O'Bannon*, 118 id. 334; *Gibbons* v. *Hoag*, 95 id. 45; *Caswell* v. *Caswell*, 120 id. 377.

Mere lapse of time will not bar recovery if an excuse therefor be given which takes hold upon the conscience of the chancellor and renders it inequitable that the bar should be interposed. *Harris* v. *McIntyre*, 118 Ill. 275.

J. E. HARRISON, and J. C. McBRIDE, for appellee:

When a matter is not admitted or denied by an answer it must be substantiated by proof. *DeWolf* v. *Long*.

2 Scam. 680; *Wilson* v. *Kinney*, 14 Ill. 27; *Stacey* v. *Randall*, 17 id. 467; *Trenchard* v. *Warner*, 18 id. 142; *Kitchell* v. *Burgwin*, 21 id. 40; *Morgan* v. *Herrick*, id. 481; *Fridley* v. *Bowen*, 5 Ill. App. 191.

The complainant must establish, by proof, whatever is not admitted by the answer, whether it be denied or not. *Dooley* v. *Stipp*, 26 Ill. 86; *Heacock* v. *Durand*, 42 id. 230; *Beidler* v. *Douglas*, 35 Ill. App. 126; *Glos* v. *Randolph*, 133 Ill. 198; *Cotes* v. *Rohrbeck*, 139 id. 535.

Courts of equity will refuse to interfere, after great lapse of time, to aid stale demands. Nothing can call them into activity but conscience, good faith and reasonable diligence. Where these are wanting the court is passive and does nothing, and even where fraud is alleged the rule is the same. *Bowman* v. *Wathan*, 42 U. S. 188.

Where the facts and circumstances surrounding a transaction are such as to have induced an inquiry, then a reasonable effort should be made to ascertain the facts in order that a party may be excused from further *laches*. 12 Am. & Eng. Ency. of Law, 547, 548.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It appears from the evidence introduced on the hearing that Daniel Wilson, in his lifetime, owned 57½ acres of land, described as the north-west quarter of the south-west quarter of section 12, and 17½ acres off the east side of the south-west quarter of the south-east quarter of section 11, township 15, north, range 1, west, in Christian county. Daniel Wilson died on the 13th day of February, 1863. He had purchased the lands of John Grigg, and held a bond for a deed, the full amount of purchase money having been paid. It seems that a year or two before Wilson's death he was confined to his bed the most of the time, and was weak in both body and mind and unable to attend to business. His wife was dead, and his two daughters, Ruth Wilson and Mary C. Jacobs, kept house for him and looked after his business. He resided on the

40-acre tract above mentioned, and Washington Wilson, a reputed son by a former wife, lived on the 17½-acre tract. He occupied under his father, and had what he could raise on the land. In addition to the children named, Daniel Wilson left surviving him two sons, John B. and Levi D. Wilson, the latter, at the death of his father, being fourteen years of age. After the death of Wilson, Washington Wilson claimed the entire 57½ acres of land, and it appears from the evidence that about three months before the death of Wilson, Washington Wilson obtained possession of the bond for a deed, and, with an assignment of the bond to himself, he and Burns, who was a pettifogger residing in the neighborhood, went to Springfield to J. C. Conkling, the agent of Grigg, to procure a deed for the land. They found a deed in the hands of the agent from Grigg to Daniel Wilson. This deed they induced the agent to return to Grigg, and they also induced the agent to procure another deed from Grigg to Washington Wilson. This deed was placed on record, and on or about the 1st day of September, 1863, Washington Wilson conveyed the lands to Burns. It also appears that in the spring of 1863, after the death of Wilson, the two daughters who resided with him on the 40 acre tract leased the land to Thomas Doolen for one year. He went into possession of the land and raised a crop, but in August of that year he sold his crop to Burns and turned over the possession of the land to him, and he occupied the land from that time until his death, in August, 1896. It also appears from the evidence that complainant, Levi D. Wilson, left Christian county and went west before he was of age, and returned in 1874 or 1875. After his return the other heirs of Daniel Wilson conveyed their interest in the premises to him. In 1882 he brought an action of ejectment against Burns to recover the possession of the premises, but he failed to recover. Nothing further was done by complainant to recover the lands until this bill was filed, in 1897.

The answer of the defendant neither admitted nor denied the charge of forgery of the assignment of the bond and the collusion and fraud in procuring the deed from Grigg, as alleged in the amended bill of complaint, and it is contended that the failure to do so is equivalent to an admission of the truth of these allegations. We do not concur in that view. Where a material averment in a bill is neither admitted nor denied by the answer it must be supported by proof. *DeWolf* v. *Long*, 2 Gilm. 679; *Stacey* v. *Randall*, 17 Ill. 467; *Wilson* v. *Kenney*, 14 id. 27; *Morgan* v. *Herrick*, 21 id. 481; *Trenchard* v. *Warner*, 18 id. 142.

It is next contended that if it should be held that appellee has not admitted the forgery, fraud and collusion charged in the bill, the court erred in dismissing the bill, because the evidence on the hearing was sufficient to sustain the allegations of the bill. There is evidence in the record tending to prove the allegations of the bill. Isaac F. McQuality testified on behalf of complainant, as follows: "During the summer of 1874 or '75 I was helping Burns, with a number of other men, to put up hay on the forty where Daniel Wilson lived. John Morgan and Uncle Johnnie Fletcher were great friends of Burns, and were there at the time. I was cleaning up around the stack between loads and went back into the shade to get a drink of water,—also some whisky which it was the custom to furnish to the men who were helping put up hay. Burns, Morgan and Fletcher had gone around in the shade, too, and were talking together and having a little of the whisky Burns had there. They were speaking of the talk there had been in the neighborhood as to how Burns got this land through Wash. Wilson from Daniel Wilson. Fletcher told Burns he always had an idea that Mary Wilson, wife of Wash. Wilson, had sneaked the papers from Daniel Wilson and wrote the assignment from Daniel Wilson to Wash. Wilson. Burns says, 'By God! that's so; Mary Wash. did sneak the papers away from old man Wilson and made the assignment.'" The

witness further testified that Burns was a farmer and pettifogger, and that his general reputation for honesty in the neighborhood was bad. Witness stated, under objection, that Burns was considered a dangerous man; that "when any one got into trouble in the neighborhood he always tried to get on one side or the other, and would get them into trouble and let them get out the best they could; he was feared by his neighbors."

Thomas Doolen testified that he knew Burns from 1859 until his death, and knew Daniel Wilson the last two or three years of his life. Witness stated he rented the 40 acre tract in controversy from Mary C. Jacobs and Ruth Wilson after their father's death,—rented it in spring of 1863; that Wash. Wilson told him he wanted him to pay rent to him, and proposed to sell the land to witness; does not remember terms; best recollection he offered to deed the land for $200. Witness and Burns talked about the land afterward, and Burns asked witness if he was on a deal with Wash. Wilson for the land. Witness replied that Wash. Wilson had offered to sell the land to witness. Burns then said to witness: "You had better not buy that land; they can't make you any title to it; you had better let it alone." Witness states he asked Burns why he thought so, and Burns said in reply that the assignment of the bond, or something that seemed to be the title they had, was of their own work; that old Daniel Wilson did' not know anything about it.

These declarations of Burns, uncontradicted, as they appear in the record, it must be admitted tend to prove that the bond for a deed was obtained from the possession of Daniel Wilson by foul means, and that the assignment of the bond from Daniel to Washington Wilson was a forgery. These facts were known to Burns when he obtained a deed from Washington Wilson for the land. Indeed, he seems to have been the principal actor in procuring a deed from Grigg to Washington Wilson on a fictitious assignment of the bond held by Daniel Wilson.

There is also evidence showing bad conduct on the part of Burns in regard to this property. As has been seen, at the death of Daniel Wilson his two daughters, who had been in charge of his business, were left in possession of the 40-acre tract. Under the advice of Burns an action of forcible entry and detainer was brought by Washington Wilson before a justice of the peace against the two daughters, for the pretended purpose of recovering possession of the land, but on the day of trial, when the two daughters were absent from home attending to the suit, under the advice of Burns Washington Wilson went to the house, removed all goods and furniture into the highway and tore down the house. This cowardly, unlawful conduct did not meet with approval in the neighborhood, and the neighbors, ascertaining what had been done, turned out in force and re-built the house and the two daughters moved in with their goods. Failing to obtain possession of the land in this unlawful manner, Burns at a later date bought out the tenant of the two daughters and thus went into the possession of the land. The term of the tenant expired in the spring of 1864, and upon the expiration of the term it was the duty of Burns to surrender possession of the land to the two daughters, who had leased to Thomas Doolen, as he went in under Doolen and had no greater rights than he. But Burns did not restore the possession of the land to the landlord upon the expiration of the lease, as in good faith he was bound to do, but retained the possession of the land claiming it as his own property. There was other disreputable conduct of Burns proven in regard to the transaction, but it will serve no useful purpose to refer to it here.

If Mary Wilson "sneaked the bond from Daniel Wilson," and made the assignment upon it without the knowledge or consent of Daniel Wilson, and under the assignment thus obtained Washington Wilson and Burns procured a deed from Grigg, as shown by the evidence of McQuality, or if the assignment of the bond was the work of Wash-

ington Wilson and his wife, as Burns told the witness Doolen, we are aware of no principle upon which the title held by Burns can be upheld and sustained. The transaction can be viewed in no other light than an attempt, by fraud and forgery, to deprive Daniel Wilson and his heirs of the land. The transaction, too, was one known to Burns from its incipiency, and he participated in it.

In addition to the evidence of the two witnesses alluded to, the complainant read in evidence the deposition of Washington Wilson, which had been taken in the ejectment suit, and it is claimed that this evidence shows that the assignment of the bond was made by Wilson. Washington Wilson testified that he was present at the time the assignment was made; that Daniel Wilson attempted to sign it, but spoiled it, as he said, and then called in the wife of Washington Wilson to complete the assignment. It is apparent that this witness attempted to sustain or · bolster up the transaction, and if the witness did not contradict himself, and if he was not contradicted by other evidence in the record, his evidence might have an important bearing; but upon referring to his evidence it will be found that he states that the bond was assigned to him in 1857 or 1858, and that he kept it about six months before going to Springfield to get a deed. It is admitted in the answer that the deed from Grigg was executed August 26, 1862. If this is true, the statement of the witness that the bond was assigned in 1857 or 1858, and that he held it seven months before receiving the deed, cannot be true. Moreover, James N. Cisna, a man whose integrity is not questioned, testified that in August, 1861 or 1862, he was called to the house of Daniel Wilson, and Wilson then showed him the bond from John Grigg for the land, and that it was not then assigned to any person. We do not think, therefore, that the unsupported statement of Washington Wilson in regard to the assignment of the bond can be held sufficient to overcome the

other evidence tending to show that the assignment was not the act of Daniel Wilson.

It is, however, insisted in the argument that complainant has been guilty of *laches*, and upon this ground he can not recover. As has been seen, Burns went into the possession of the land in the latter part of 1863. At that time complainant was a minor, and he did not become of age until 1870. *Laches* could not be imputed to complainant during his minority. In the spring of 1876 he procured deeds from the other heirs conveying their interest in the land to him, and in 1882 he brought an action of ejectment but on a trial failed to recover. No further steps were taken to recover the land until February, 1897, when this bill was filed. The law is well settled in this and other States that a court of equity will refuse its aid to stale demands where the party has slept upon his rights or acquiesced for a great length of time, and shows no excuse for his delay in asserting his rights. (*Castner* v. *Walrod*, 83 Ill. 171; *Dempster* v. *West*, 69 id. 613.) Where, however, a party has been injured by fraud, and remains in ignorance of the fraud without any fault on his part, and a bill has been filed for relief on account of the fraud, *laches* will not, as a general rule, defeat a recovery. The obligation to institute proceedings can only arise upon a discovery of the fraud. (13 Am. & Eng. Ency. of Law, 683; *Middaugh* v. *Fox*, 135 Ill. 344; *Greenman* v. *Greenman*, 107 id. 404; *Jones* v. *Lloyd*, 117 id. 597.) The complainant testified that he did not learn that the assignment of the bond under which Washington Wilson obtained a deed to the land was a forgery until 1897. It seems from the evidence that the people in the neighborhood were afraid of Burns, and those who knew the facts in regard to the manner in which he and Washington Wilson had procured title to the property were afraid to disclose the information they had to complainant while Burns was living. The witness Doolen, on giving the reasons why he did not inform the

Wilsons what he knew, said: "Burns was a man I did not want to come in contact with, and I let him alone whenever it was possible for me to do it." Under all the facts as disclosed by the record we do not regard the *laches* of complainant a bar to a recovery.

The judgment of the circuit court will be reversed, and the cause will be remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*