## John D. Hooker v. Midland Steel Company, et al.

### Gen. No. 11,330.

1. FRAUDULENT TRANSACTION—*when relief will not be granted in aid of.* Where the defendant charged with having perpetrated a fraud has offered to place the complainant *in statu quo*, no relief will be granted such complainant in equity where he has refused or has neglected within a reasonable time to avail himself thereof.

Bill for specific performance, etc. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM. Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed December 16, 1904.

MANNING, COLE & MANNING, for appellant.

GANN, PEAKS & HAFFENBERG, for appellees; OLIVER H. HORTON, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The abstracts and arguments of counsel in this case are voluminous, but in the view we take it will be unnecessary to set forth the averments of appellant's bill in full, or to consider all the questions presented in the briefs.

This appeal presents for review the action of the Superior Court in sustaining the demurrer to appellant's amended and supplemental bill. That bill first recites the contents of and the proceedings taken under the original bill, and states *inter alia* that appellant owned seventy-two shares, and that certain of the defendants owned nine-tenths of the stock of the Midland Steel Company; that in the fall of 1898 or spring of 1899 appellees Beatty and Battelle, two of such stockholders, became interested in a project to combine a number of sheet steel mills into a "trust"; that their negotiations to this end culminated in the early part of May, 1899, in "an elaborate and formal written option" given to certain promoters by the officers of the Midland Steel Company, for the sale of the plant and property of the company, not including, however, the cash on hand, accounts and bills receivable and possibly other items; that

the price named in said option was $1,000,000 preferred and $1,000,000 common stock of the "trust" then proposed to be formed; and that in the course of appellee Beatty's dealing with appellant, herein complained of, Beatty, then president of the Midland Company, estimated such preferred stock in the proposed trust as probably worth $90 per share and the common stock as worth $60 per share, which was the quoted price of preferred and common stock of the National Steel Company on the New York Stock Exchange at that time, and that on this valuation the option price would be equivalent to $1,500,000 cash, and the value of the entire property $1,575,000. The bill further states that in March or April, 1900, a transfer of Midland Company property to the American Sheet Steel Company actually took place, said last named company being subsequently merged into the United States Steel Corporation, and that the possession of the 72 shares of stock sold to Beatty by appellant, as hereinafter stated, enabled appellees to obtain in exchange therefor 240 shares each of preferred and common stock in said combinations, the value of which appellant claims he is entitled to recover, since, as he avers, he was induced to part with his 72 shares of Midland stock to Beatty through the latter's fraud.

It is charged that appellee Beatty, either of his own motion or conspiring with other large stockholders, wrote complainant a letter which was untrue, in that it stated a sale of the Midland Company's property to a trust had actually occurred, when only an option had been given; that the price paid was $600,000, when it was $2,000,000 in stock; that the sale included the whole property of the Midland Company, whereas the cash on hand, accounts and bills receivable, were excluded; that the letter was in form addressed to stockholders generally, whereas in fact it was sent only to appellant, with fraudulent intent to induce him to surrender his stock at a price below its real value. Appellant claims to have been misled to suppose that under the option as alleged to have been given, the stockholders in general would receive $200 a share in cash for

their Midland stock, but that appellees Beatty and Battelle were to have the privilege personally of taking in exchange for half their Midland stock, shares in the proposed "trust," which would enable them to realize an average of $250 a share for their Midland stock, a privilege which would be extended to appellant; and that this was the highest price to be paid any Midland stockholder. The charge is that thus appellant was induced to sell his 72 shares of Midland stock to Beatty for $250 in cash per share, a total of $18,000, although, as he claims, it was then worth more than twice that sum. He states, however, it was " as an alternative to a suit by complainant" that "Beatty then offered to pay him $18,000 for his stock "; in other words, appellant was induced to make the sale, because he compelled Beatty to buy as the alternative to a lawsuit. The transfer to Beatty occurred June 14, 1899. Prior to that time appellant was opposing a sale or transfer to a "trust" under any circumstances, but he says that finally after an investigation by his attorney he " surrendered " his Midland stock to Beatty, but that he did so nevertheless solely upon the faith of Beatty's representations. He states that when he did this, however, he advised Beatty that in case the sale to the trust should not be consummated as then proposed under the option, he " would reassert his right as owner of said stock," and he avers that his right to do this was recognized by Beatty, when about November 5, 1899, nearly five months afterward, Beatty notified appellant that the proposed sale had fallen through, and thereupon offered the return of the 72 shares of Midland stock to appellant, upon his refunding the $18,000 paid him for it, with interest at six per cent. He says that Beatty demanded an immediate acceptance or rejection of this offer.

It appears from the bill that appellant after the sale of his stock to Beatty kept up a correspondence about it, keeping in touch as he says with the transaction, apparently not quite sure whether he had made a good bargain or not, and was informed that the sale to the trust had been postponed from time to time, told that he had been paid a big

price for his stock, and he states that it was in reply to a request to be shown the trust agreement of sale that he was notified the proposed sale had fallen through.

The prayer of the amended and supplemental bill under consideration is in the alternative, first, for specific performance, without prejudice to appellant's rights in the Midland Steel Company's property reserved from the sale, and that defendants be required to pay complainant the alleged value of 240 shares of preferred at $90 and the same amount of common stock in the "trust" at $60 per share, together with appellant's proportion of such property as was not included in the option and proposed sale, with interest from June 14, 1899; or, second, if specific performance be denied, that the sale of June 14, 1899, to Beatty may be cancelled and the parties placed as far as may be *in statu quo* as of that date.

The ground upon which the so-called specific performance is asked for appears to be that inasmuch as Beatty "pretended," it is said, to take appellant's Midland stock at a price based on an estimated value of the stock in the proposed trust which appellant would receive in exchange for his Midland stock if the sale went through, and as this estimated valuation, based on the market quotations of National Steel Company's stock, another and different corporation not then connected with the transaction in any way so far as appears, was $90 for preferred and $60 for common stock, therefore this must be regarded as having established a basis of valuation of the 240 shares each of preferred and common stock in the American Sheet Steel Company which appellant says would have been his proportion in exchange for his Midland stock if he had kept it instead of selling it to Beatty. Therefore the argument is that appellee should pay appellant for 240 shares of " trust " stock on that basis, notwithstanding so far as appears from the bill, the original option sale then proposed, as to which appellant claims to have been deceived, was not consummated, and the sale to the Sheet Steel Company was made after appellant had practically refused to accept the

return of his Midland stock, which he claims he had been fraudulently induced to part with in the first place.

Instead of accepting the offer of Beatty to return, appellant filed a bill, ostensibly to find out whether or not he had been imposed upon in the first place, whether there had in fact been any fraud practiced, claiming that if there had been he was entitled to make appellees pay him what he apparently thinks he might have forced Beatty to pay him in the first instance as the price of withdrawing his opposition to the proposed transfer to the embryonic " trust," had he known all the facts about the negotiations then in progress. If as a result of investigation in court it should appear that Beatty told the truth, that the proposed sale to the trust had in reality fallen through, then appellant prayed to be allowed to accept Beatty's offer to return or not, as he might see fit.   Meanwhile the company was to be held up if necessary by an injunction, and at all events prevented, so far as this stock was concerned, from carrying on new negotiations or making any sale whatever, no matter what its interest might seem to require, until appellant could find out by a proceeding in equity whether he could make more by accepting or rejecting the return of the stock of which he was protesting he had been wrongfully deprived.   To this end he proceeded to take about a thousand pages of testimony through the indulgence of the court.   When July 1, 1901, he filed the amended and supplemental bill, he seems to have concluded that it would have been to his advantage if he had accepted the offer to be reinstated.   He then, after more than two years had intervened, brought into court and tendered $20,211, being the $18,000 paid him June 14, 1899, with interest to date of the tender, on condition that he be placed *in statu quo* as of June 13, 1899.   That tender was declined.

Without reference to apparent inconsistencies in the bill, the substantial ground as therein stated upon which appellant bases his claim to relief is the alleged fraud and concealment by which he says he was induced to part with his stock for what he insists was an inadequate consideration.

We need not, however, consider whether or not he could obtain relief on that ground. He was offered the return of the stock of which he claims to have been fraudulently deprived. This offer, made November 5, 1899, if then accepted would, so far as appears from the bill, have reinstated him as a stockholder in the Midland Company with all his former rights and privileges unimpaired. It is not claimed that the intrinsic value of the stock was not the same when offered back to him as when he first parted with it. If its speculative value was lessened because of the apparent failure of the "trust" to consummate at that time the purchase of the Midland Company, he had no reason to complain more than other stockholders, and would have been no worse off had he accepted the offer to return, than if the sale to Beatty had never been made. At that time no transfer of the Midland property had occurred and the previous negotiations were said to have fallen through. Whatever negotiations were still pending or were subsequently consummated, he as a stockholder would have been entitled to participate in, to oppose or favor as he might have deemed best. The final transfer of Midland property to the American Sheet Steel Company did not occur until March or April following. In his amended and supplemental bill appellant gives as a reason apparently for not then accepting Beatty's offer to return, that such offer was made "solely with the further fraudulent purpose of concealing the gross deceits previously practiced upon complainant; that it was made without any change or abatement whatever of Beatty's desire and intention to be rid of complainant as a stockholder, and to deprive him of his stock for less than its real value whenever opportunity so to do without danger of detection should present itself." It is not what Beatty thought but what he did, that is material here. He offered to return appellant the stock in controversy. He offered in other words to undo the alleged fraud, and place appellant *in statu quo*. If it be conceded for the purpose of the argument that appellant was entitled to fuller information in June 1899, as to the negotiations in

progress, of which information he was fraudulently deprived and which knowledge if he had possessed it would have induced him to demand a higher price than he then received for his Midland stock, or would have shown that in fact his said stock was intrinsically more valuable than Beatty is said to have induced him to believe, the wrong would have been wiped out and corrected by the restoration of his stock and the return of the money paid him for it, in accordance with what appellant says he insisted upon as the condition of its original transfer to Beatty. It may perhaps be deemed a little singular, if as appellant says his "surrender" of the stock to Beatty was merely in trust for the sole purpose of the sale to the combination as then proposed, that he should have demanded and received from the so-called trustee its estimated value in all respects as in the case of a cash sale. But if such was the arrangement, as appellant says it was, then we are unable to discover why it was not incumbent upon appellant, when informed November 5, 1899, that the option to the trust had expired and the sale fallen through, to take back the stock from his alleged trustee and refund the money. If on the other hand the transaction with Beatty be deemed an actual sale of appellant's stock for a consideration which by reason of Beatty's fraud was inadequate, then whatever might have been the previous fraud, appellant could have no cause to complain when Beatty offered to rescind the sale, surrender all that he had gained by the alleged fraud and place appellant *in statu quo*. Appellant seems to have proceeded, however, on the view that as he suspected appellees might have done something during the time Beatty held the stock to diminish its value, he had a right to determine that question with the aid of a court of equity and hold the matter open indefinitely before deciding whether to take it back or not. We cannot agree with this view. If he had been fraudulently induced to part with the stock and had accepted the offer to return it, then, reinvested with the rights and standing of a stockholder, he would doubtless have been in a position to protect himself from loss and if need be to in-

voke the aid of the court, should it then appear that while Beatty held the stock its intrinsic value had been wrongfully diminished. It was his duty to act upon the proposition with reasonable promptness. But appellant chose to remain outside of the company, to retain the money paid him for the stock, and in that position we are at a loss to discover upon what ground he is entitled now to demand reinstatement or to claim rights which he could only assert as a stockholder, or as one entitled to be treated as such, and why he should now be awarded whatever of gain the stock has since earned in the hands of its holders from whom he had refused to take it back, when he might have done so. Nor, in view of appellant's refusal of the offer to return, which was in effect a waiver of the alleged fraud, do we regard him as entitled to invoke the aid of equity to enable him, as he states it, " to calculate the real intrinsic value of his shares of stock at the time he surrendered the same." The case is not that where a stockholder has been fraudulently deprived of his stock and the fraudulent holder refuses to make restitution. In such case the injured party may doubtless have such relief as the conditions warrant. Here restitution was offered.

It seems to be claimed, however, that appellant is entitled to be treated as still a shareholder in the Midland Company and owner of 72 shares of its stock, notwithstanding his refusal or neglect for two years or more to accept Beatty's offer to return them. Appellant's theory apparently is that appellees still hold the 72 shares in trust for him. In this we cannot concur. If it be conceded, and as to this appellant does not seem to have quite made up his own mind, that the transfer to Beatty was not a sale or was at most a conditional sale, appellant when offered the return of his stock was in equity bound either to accept or reject the offer within a reasonable time. He could not remain idle, refusing to take it back and to assume again the duties and responsibilities of a stockholder, and then elect at his leisure whether to be reinstated or not, regardless of what might occur in the meantime to affect its

value. Appellees were entitled to know promptly whether he was a stockholder or not. Events were in contemplation, as he knew, which might at any time put an end to the business of the corporation. It would be inequitable in the extreme to require appellees to hold the stock amid changing conditions for an indefinite time, and account for it as trustee for appellant in case the latter should eventually conclude that he would take the stock or its proceeds as of the date when they offered to return it to him; to account to him for its gains if there were any, but stand the losses, if any, themselves. " A court of equity will not aid a party guilty of unreasonable delay, in asserting his rights." Bishop v. Thompson, 196 Ill. 206–208. If appellant had all the time remained in ignorance of a fraud which without fault on his part deprived him of the value of his stock when he sold it, with no offer of restitution, a very different case would have been presented. In such event he might not have been chargeable with laches in not asserting his rights, (Wilson v. Augur, 176 Ill. 561–571) and might seek proper relief within any reasonable time.

It is stated by his counsel that appellant's original bill was filed, not to compel a rescission of the sale to Beatty " but to postpone and preserve the offer to rescind then voluntarily made by Beatty until complainant could obtain through a court of equity the information denied him by Beatty, essential to an intelligent choice by him, between holding the phenomenal bargain which Beatty then assured him he had, or relinquishing that bargain to regain his full former stockholdership in the company." In other words, he wanted a court of equity to help him find out whether it was to his advantage to retain the money if he had got the best of Beatty in the deal, or to return it and take back the stock if Beatty had got the best of him, and enforce whatever choice he might ultimately conclude to make. We know of no such ground of equity jurisdiction. If, as we have said, Beatty had wronged him in acquiring his stock and sought to retain the advantage, appellant might have been entitled to equitable relief.

When, however, Beatty offered to right the alleged wrong and appellant refused to accept the offer, no reason remained why a court of equity should interfere to enable him to make up his mind to accept or reject the offer. He cannot in equity be permitted under the circumstances of this case, to hold up the offer for two years while business conditions were changing, and now that he finally concludes it would have been to his advantage to accept it, be allowed to compel the appellees to account for and pay over to him whatever profit has been derived from stock he refused to take back when he had the opportunity.

For the reasons indicated, the decree of the Superior Court will be affirmed.

*Affirmed.*